1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    GAVIN OSUNA,                              No.  2:25-cv-1699 DC AC PS

12                   Plaintiff,

13           v.                                 ORDER

14    RIVER DELTA UNIFIED SCHOOL
      DISTRICT, et al.,
15
                     Defendants.
16

17

18           Plaintiff is proceeding in this action pro se.  The case was accordingly referred to the

19    undersigned for pretrial purposes by E.D. Cal. 302(c)(21).  The court previously found plaintiff's

20    request for leave to proceed in forma pauperis ("IFP") incomplete and ordered plaintiff to file a

21    completed and signed application within 14 days.  ECF Nos. 2-3.  Plaintiff has since refiled his

22    application and submitted the affidavit required by that statute.  See 28 U.S.C. § 1915(a)(1).  The

23    new motion to proceed IFP (ECF No. 4) will therefore be granted.

24           Upon screening the complaint, the court also finds that plaintiff has not adequately pled

25    claims as to any defendant.  Accordingly, the complaint will not be served.  Because the

26    complaint provides sufficient facts to suggest that plaintiff may be able to cure the defects in

27    these claims, however, plaintiff will be given the opportunity to file an amended complaint.

28    ////

                                                    1

1                                  I. SCREENING

2          A. Legal Standard

3          The federal IFP statute requires federal courts to dismiss a case if the action is legally

4    "frivolous or malicious," fails to state a claim upon which relief may be granted or seeks

5    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  A

6    claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v.

7    Williams, 490 U.S. 319, 325 (1989).  In reviewing a complaint under this standard, the court will

8    (1) accept as true all the factual allegations contained in the complaint, unless they are clearly

9    baseless or fanciful, (2) construe those allegations in the light most favorable to the plaintiff, and

10   (3) resolve all doubts in the plaintiff's favor.  See Neitzke, 490 U.S. at 327; Von Saher v. Norton

11   Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S.

12   1037 (2011).

13         The court applies the same rules of construction in determining whether the complaint

14   states a claim on which relief can be granted.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (court

15   must accept the allegations as true); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (court must

16   construe the complaint in the light most favorable to the plaintiff).  Pro se pleadings are held to a

17   less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520

18   (1972).  However, the court need not accept as true conclusory allegations, unreasonable

19   inferences, or unwarranted deductions of fact.  Western Mining Council v. Watt, 643 F.2d 618,

20   624 (9th Cir. 1981).  A formulaic recitation of the elements of a cause of action does not suffice

21   to state a claim.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007); Ashcroft v. Iqbal,

22   556 U.S. 662, 678 (2009).

23         To state a claim on which relief may be granted, the plaintiff must allege enough facts "to

24   state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has

25   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26   reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at

27   678. A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity

28   to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v.

                                             2

1   Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in

2   Lopez v. Smith, 203 F.3d 1122 (9th Cir.2000)) (en banc).

3          B.  The Complaint

4          Plaintiff's lawsuit arises out of alleged constitutional violations by the RDUSD, along

5   with its employees Katherine Wright and Royce Cornelson, and seeks relief pursuant to 42 U.S.C.

6   § 1983.  ECF No. 1 at 2-3.  The complaint alleges that on September 4, 2023, while a 17-year-old

7   RDUSD student, plaintiff made a post on social media that did not disrupt school operations or

8   violate the California Education Code.  ECF No. 1 at 3.  This post also constituted protected

9   speech under the First Amendment.  Id.  On September 5, 2023, plaintiff was called out sick by

10  his parents.  Id.  He would later produce a doctor's note confirming that plaintiff's chronic

11  condition had worsened, and authorizing ten days of home instruction.  Id. at 3, 12.

12         Also on September 5, however, RDUSD administrators suspended plaintiff from school

13  based on his social media post.  Id. at 3.  This suspension occurred while plaintiff was absent due

14  to his illness, without giving him notice of the alleged violations, an opportunity to respond, or an

15  opportunity to have a guardian or advocate assist in his defense against the suspension.  Id.  This

16  also led to the revocation of his inter-district transfer application from the Sacramento City

17  Unified School District.  Id. at 14.

18         Both of plaintiff's § 1983 claims arise under the Fourteenth Amendment.  Id. at 4.  The

19  first alleges lack of due process in suspending plaintiff without adequate notice of the charges or a

20  reasonable opportunity to defend himself, as required under Goss v. Lopez, 419 U.S. 565, 574,

21  581 (1975).  Id. The second invokes the Equal Protection Clause, alleging that plaintiff's

22  suspension was harsh compared to discipline other students face when voicing similar or more

23  egregious views.  Id. at 4-5.  In addition to declaratory relief confirming that defendants had

24  violated plaintiff's constitutional rights, plaintiff seeks compensatory and punitive damages, an

25  injunction compelling the removal of plaintiff's suspension from his record and prohibiting

26  retaliation, and attorney's fees and costs.  Id. at 5.

27  ////

28  ////

3

1         C. Analysis

2            1. Scope of Relief as to RDUSD

3         "The Eleventh Amendment bars suits against the State or its agencies for all types of

4    relief, absent unequivocal consent by the state." Krainski v. Nev. Ex rel. Bd. of Regents of Nev.

5    Sys. Of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010) (internal quotations omitted).  California

6    school districts like RDUSD are state agencies for purposes of determining Eleventh Amendment

7    immunity.  Cole v. Oroville Union High School Dist., 228 F.3d 1092, 1100 n.4 (9th Cir. 2000).

8    As to the § 1983 claims, 42 U.S.C. § 1983 only authorizes suit against a "person," and neither a

9    state nor a state agency is a "person" within the meaning of § 1983.  See Will v. Mich. State

10   Dep't of Police, 491 U.S. 58, 65 (1989).

11        The Eleventh Amendment does not entirely "bar claims for prospective declaratory or

12   injunctive relief against states or state agencies." Maizner v. Hawaii, Dept. of Educ., 405

13   F.Supp.2d 1225, 1230 (D. Hawaii 2005) (citing Native Village of Noatak v. Blatchford, 38 F.3d

14   1505, 1511 (9th Cir.1994)).  To pursue injunctive relief, however, the complaint must name the

15   agency official responsible for effecting such relief, rather than the agency itself, as defendant.

16   See, e.g, Laird v. United Teachers Los Angeles, 615 F.Supp.3d 1171, 1181 (C.D. Cal. 2022)

17   (holding that "an action against a public school district in its own name…falls outside the scope

18   of the exception" to Eleventh Amendment immunity); In re Lazar, 237 F.3d 967, 976 n. 9 (9th

19   Cir. 2001) (finding the exception to Eleventh Amendment immunity inapposite where an action

20   was brought "against the State Board, and not against the appropriate officers of the State

21   Board").

22        Plaintiff may not seek damages, compensatory or otherwise, from the RDUSD.  He may

23   nonetheless seek an injunction compelling the removal of his suspension from his educational

24   record and enjoining any retaliation against his filing of his action.  Injunctive remedies, however,

25   are only available from the RDUSD employee who would be responsible for effectuating them.

26   If plaintiff wishes to pursue injunctive relief to remove the suspension from his academic record,

27   he must name as a defendant, in their official capacity, the specific individual with the ability to

28   make the desired adjustment to his record.

1              2.  Claims for Monetary Damages Against Individual RDUSD Officials

2                   a.  Official and Personal Capacity

3          Although the Eleventh Amendment bars suits against the state and state agencies, it does

4    not preclude all suits against state officials like the named RDUSD employees.  While an official

5    capacity claim against a state official is merely another way of pleading an action against the

6    entity of which the defendant is an officer, the Eleventh Amendment only bars suits for damages

7    against state officials in their official capacity.  See Lewis v. Clarke, 581 U.S. 155, 162 (2017).  It

8    does not bar suits against state officials in their official capacity for prospective declaratory or

9    injunctive relief.  See Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1153 (9th Cir. 2018);

10   Will, 491 U.S. at 71 n.10.

11         A plaintiff may seek monetary damages under § 1983 against state officials in their

12   personal or individual capacities.  See Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016)

13   (the Eleventh Amendment does not bar claims for damages against state officials in their personal

14   capacities); Cornel v. Hawaii, 37 F.4th 527, 531 (9th Cir. 2022) (state officials sued in their

15   personal capacity are persons for purposes of § 1983 and can be sued for monetary damages).

16   Notably, "[s]ection 1983 is not itself a source of substantive rights but merely provides a method

17   for vindicating federal rights elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994)

18   (citation and internal quotation marks omitted).  To state a cognizable § 1983 claim, a plaintiff

19   must allege the violation of a right protected by the Constitution and laws of the United States,

20   and that the alleged deprivation was committed by a person who acted under color of state law.

21   42 U.S.C. § 1983; Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 921 (9th Cir.

22   2011).  A defendant acted under color of state law if they "exercised power 'possessed by virtue

23   of state law and made possible only because the wrongdoer is clothed with the authority of state

24   law.'"  Id. at 922 (internal quotations omitted).

25         Both Wright and Cornelson are cognizable defendants, in their personal capacities, for

26   purposes of plaintiff's § 1983 claims.  Plaintiff may seek damages from them (or other specific

27   RDUSD employees), even though damages are unavailable from RDUSD itself.  To state a claim

28   for damages under § 1983 against any individual defendant, however, plaintiff must allege facts

                                                    5

1    demonstrating that the defendant caused a deprivation of plaintiff's constitutional rights.  See

2    West v. Atkins, 487 U.S. 42, 48 (1988) (discussing elements of § 1983 liability).  The complaint

3    before the court fails to make this showing.

4            b.  Causation Under § 1983

5            Under Section 1983, a defendant is liable only for constitutional violations that were

6    caused by that defendant's conduct.  White v. Roper, 901 F.2d 1501, 1505-1506 (9th Cir. 1990).

7    Plaintiff must plead, and ultimately prove, facts that demonstrate each defendant's involvement in

8    the alleged violations.  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  "A person 'subjects'

9    another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

10   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

11   legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

12   588 F.2d 740, 743 (9th Cir. 1978); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988)

13   ("The inquiry into causation must be individualized and focus on the duties and responsibilities of

14   each individual defendant whose acts or omissions are alleged to have caused a constitutional

15   deprivation.").  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative

16   link or connection between a specific defendant's actions and the claimed deprivation.  Rizzo v.

17   Goode, 423 U.S. 362, 371 (1976).

18           Officials cannot be sued on the theory, known as *respondeat superior*, that they are liable

19   by virtue of their position for the conduct of their subordinates.  Ashcroft v. Iqbal, 556 U.S. 662,

20   679 (2009).  A supervisor may be held liable for the acts of his or her subordinates only if the

21   supervisor participated in or directed the violations, or knew of the violations of subordinates and

22   failed to act to prevent them.  See Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

23           Here, the complaint does not state a claim against either Wright or Cornelson because it

24   fails to specify what either of them did that caused the alleged constitutional violations.

25           c.  Due Process Violation

26           Plaintiff claims that his due process rights were violated because he was not provided with

27   adequate notice of the charges or a reasonable opportunity to defend himself before his

28   suspension.  ECF No. 1 at 4.

1    Under the Due Process Clause, "No State shall ... deprive any person of life, liberty, or

2 property, without due process of law." U.S. Const. amend. XIV, § 1. "A section 1983 claim

3 based upon procedural due process thus has three elements: (1) a liberty or property interest

4 protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of

5 process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

6    Plaintiff does allege that he had a "constitutionally protected interest in his education and

7 reputation." ECF No. 1 at 4. "Property interests are not created by the Constitution, 'they are

8 created and their dimensions are defined by existing rules or understandings that stem from an

9 independent source such as state law ....'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

10 538 (1985) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Other districts in the

11 Ninth Circuit have held that when the corresponding states provide public education, a student's

12 right to that education is a property interest protected by the Due Process Clause. Lindsey v.

13 Matayoshi, 950 F.Supp.2d 1159, 1169 (D. Hawaii 2013); Burge ex rel. Burge v. Colton School

14 District, 100 F.Supp.3d 1057, 1074 (D. Or. 2015) (citing Goss, 419 U.S. at 576). Removal from

15 public school for more than a *de minimis* period of time can therefore give rise to a due process

16 claim under § 1983. Burge, 100 F.Supp.3d at 1074.

17    Plaintiff also cites Goss to demonstrate what due process protections apply to his property

18 interest. ECF No. 1 at 4. The U.S. Supreme Court held that before suspending a student for even

19 less than ten days, he must "be given oral or written notice of the charges against him and, if he

20 denies them, an explanation of the evidence the authorities have and an opportunity to present his

21 side of the story." Goss, 419 U.S. at 581. RDUSD, in contrast, suspended plaintiff without

22 notice that such discipline was based on his social media post a few days prior. ECF No. 1 at 3.

23 Because plaintiff was absent due to his medical condition, school administrators did not provide

24 him an opportunity to defend himself. Id.

25    Although plaintiff has alleged facts that adequately identify a violation of due process, he

26 has not stated a claim under § 1983 because the complaint does not demonstrate how Wright or

27 Cornelson, or any other potential defendant, caused this deprivation.

28 ////

1          d.   Equal Protection Clause

2          The complaint also alleges that plaintiff's suspension violated the Equal Protection Clause

3    of the Fourteenth Amendment because plaintiff was subjected to more severe disciplinary action

4    than other students engaged in equally or more egregious conduct.  ECF No. 1 at 4-5.  Plaintiff

5    does not allege discrimination based on his membership in a protected class, see Thornton v. City

6    of St. Helens, 425 F.3d 1158, 1166–67 (9th Cir. 2005), but apparently seeks to bring a "class of

7    one" claim as recognized in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To state

8    such a claim, a complaint must allege facts showing that the government actors (1) intentionally

9    (2) treated plaintiff differently than other similarly situated persons, (3) without a rational basis.

10   Gerhart v. Lake County, 637 F.3d 1013, 1022 (9th Cir.).

11         Here, the complaint does not include specific factual allegations identifying or describing

12   other similarly situated students or demonstrating the absence of a rational basis for treating

13   plaintiff differently from them.  Plaintiff's conclusory allegation that his suspension was harsher

14   than the discipline other students have faced for equal or greater misconduct is insufficient.  See

15   Twombly, 550 U.S. at 570; Western Mining Council, 643 F.2d at 624.  To state a viable claim,

16   plaintiff must provide specific facts about other students who committed equal or greater

17   misconduct and were not suspended.  Without such supporting detail regarding the instances of

18   misconduct (both plaintiff's and that of the other students he claims are "similarly situated") and

19   the disciplinary actions taken (or not taken), there can no showing that plaintiff was similarly

20   situated to those other students, that plaintiff was in fact treated more harshly, or that school

21   officials acted without a rational basis for any distinction that was drawn.

22         Finally, the claim fails because plaintiff does not identify the individual(s) who made the

23   decision to treat him differently than other students who had committed similar acts.

24          e.   First Amendment Violation

25         Although the complaint does not assert a cause of action under § 1983 for violation of

26   plaintiff's First Amendment rights, it does expressly allege that the suspension was based on a

27   social media post that was protected under the First Amendment.  ECF No. 1 at 3.  The complaint

28   further alleges that the suspension constitutes "viewpoint-based retaliation" for the post.  Id. at 1.

8

1    When amending the complaint, plaintiff may raise a claim for relief on First Amendment grounds

2    if he wishes.

3         The extent of First Amendment protections applicable to public school students depends

4    on whether the speech at issue is "(1) vulgar, lewd, obscene, and plainly offensive speech, (2)

5    school-sponsored speech, [or] (3) speech that falls into neither of these categories." Waln v.

6    Dysart School District, 54 F.4th 1152, 1162 (9th Cir. 2022) (quoting Jacobs v. Clark Cnty. Sch.

7    Dist., 526 F.3d 419, 429 (9th Cir. 2008)).  If speech falls into the first category, schools may

8    censor it without "showing that such speech occurred during a school-sponsored event or

9    threatened to 'substantially interfere with [the school's] work.'" Chandler v. McMinnville School

10   District, 978 F.2d 524, 529 (9th Cir.1992) (quoting Tinker v. Des Moines Indep. Community

11   School Dist., 393 U.S. 503, 509 (1969)).  If it falls into the second, such that the public might

12   interpret the speech to "bear the imprimatur of the school", the school may "exercise greater

13   control" over such speech as to "dissociate itself" from any speech that would substantially

14   interfere with its work.  Chandler, 978 F.2d at 529 (citing Hazelwood School Dist. v. Kuhlmeier,

15   484 U.S. 260, 271, 273 (1988)).  If it falls into the third, school officials must show that sufficient

16   facts "led school authorities to forecast substantial disruption of or material interference with

17   school activities" if they do not restrict such speech.  Chandler, 978 F.2d at 529 (quoting Tinker

18   v. Des Moines Indep. Community School Dist., 393 U.S. 503, 514 (1969)).

19        Restrictions on the third group, in turn, include those that either facially discriminate

20   against certain viewpoints or appear content-neutral but are applied in a discriminatory manner.

21   See Waln, 54 F.4th at 1162 (citing Jacobs, 526 F.3d at 432 & n.28).  Both are subject to strict

22   scrutiny, at which point the school must demonstrate that the restriction is narrowly tailored to

23   address a compelling interest.  See Waln, 54 F.4th at 1162-63.

24        Plaintiff's statement that suspending him for his social media post constituted "viewpoint-

25   based retaliation" (ECF No. 1 at 1) is a conclusory allegation that is insufficient to establish an

26   essential element of a claim.  See Twombly, 550 U.S. at 570; Western Mining Council, 643 F.2d

27   at 624.  To plead a § 1983 claim based on the First Amendment, an amended complaint must

28   include the substance of the contested post to demonstrate that it was not vulgar, obscene, or

9

1    plainly offensive.  Plaintiff must then articulate whether the post was made using RDUSD

2    resources, referenced RDUSD entities or staff, or otherwise could be affiliated with RDUSD.

3    Finally, he must identify the viewpoint he alleges the RDUSD discriminated against him for

4    expressing, including any facts demonstrating that the RDUSD does not discipline others for

5    social media posts that do not include such a viewpoint.  As with his other claims, plaintiff must

6    also plead sufficient facts as to how Wright and Cornelson, or another individual defendant or

7    defendants, caused the alleged First Amendment violation.

8         3.  Conclusion

9         For the reasons explained above, the complaint as drafted does not state a claim for relief

10   against any named defendant.  Accordingly, it will not be served.  Plaintiff will be provided an

11   opportunity to file an amended complaint that addressed the problems identified above.

12        A pro se litigant should receive leave to amend unless the complaint's deficiencies could

13   not be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

14   Amendment is futile as to claims against RDUSD, as it is protected by Eleventh Amendment

15   immunity.  Insofar as plaintiff seeks injunctive relief, however, he may by amendment name an

16   official-capacity defendant with the authority to remove the contested suspension from plaintiff's

17   academic record should he prevail on the merits.

18        Plaintiff may also attempt to cure the defects in his due process and equal protection

19   claims by providing additional facts as specified above, clarifying what acts of defendants Wright

20   and Cornelson caused the alleged constitutional violations, and/or naming additional defendants.

21   If plaintiff wishes to pursue a First Amendment theory, he must add a third § 1983 claim based on

22   infringement of his free speech rights and providing all necessary facts.

23                          II.  AMENDING THE COMPLAINT

24        If plaintiff chooses to amend the complaint, the amended complaint must not force the

25   court and the defendants to guess at what is being alleged against whom.  See McHenry v. Renne,

26   84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal of a complaint where the district court

27   was "literally guessing as to what facts support the legal claims being asserted against certain

28   defendants").  The amended complaint must not require the court to spend its time "preparing the

1    'short and plain statement' which Rule 8 obligated plaintiffs to submit." Id. at 1180.  The

2    amended complaint must not require the court and defendants to prepare lengthy outlines "to

3    determine who is being sued for what." Id. at 1179.

4            The amended complaint must not refer to a prior pleading or separate motion to make

5    plaintiff's amended complaint complete.  Any amended complaint must be complete without

6    reference to any prior pleading.  Local Rule 220.  This is because, as a general rule, an amended

7    complaint supersedes the original complaint.  See Pacific Bell Tel. Co. v. Linkline

8    Communications, Inc., 555 U.S. 438, 456 n.4 (2009) ("[n]ormally, an amended complaint

9    supersedes the original complaint") (citing 6 C. Wright & A. Miller, Federal Practice &

10   Procedure § 1476, pp. 556-57 (2d ed. 1990)).  Therefore, in an amended complaint, as in an

11   original complaint, each claim and the involvement of each defendant must be sufficiently

12   alleged.

13                            III.  PRO SE PLAINTIFF'S SUMMARY

14           You are being granted in forma pauperis status and do not have to pay the filing fee.

15   However, your complaint does not state a claim against any defendant and cannot proceed.  River

16   Delta Unified School District ("RDUSD") is immune from suit under the Eleventh Amendment.

17   As for defendants Wright and Cornelson, the complaint does not say what they did to cause the

18   alleged violations of your constitutional rights.  Without that information, you cannot state a

19   claim against them.  You are being given the chance to file an amended complaint that fixes the

20   problems identified above.

21           In considering whether and how to amend, carefully consider all the information provided

22   in this order about the claims you are trying to bring and the legal principles that apply to them.

23   In order to get the suspension removed from your academic record, you need to name as a

24   defendant, in their official capacity, the district official with power to do so.  To win money

25   damages, you need to provide enough information *as to each claim* to show *both* that a specific

26   constitutional right was violated *and* that a specific district employee or employees caused that

27   violation.  If you want to pursue a First Amendment claim, you need to set it out as a separate

28   cause of action.

1    You are being given 30 days to submit an amended complaint.  If you do not submit an

2   amended complaint by the deadline, the undersigned will recommend that the case be dismissed.

3                                          IV.  CONCLUSION

4    Accordingly, IT IS HEREBY ORDERED that:

5    1.  Plaintiff's request to proceed in forma pauperis (ECF No. 4) is GRANTED; and

6    2.  Plaintiff shall have 30 days from the date of this order to file an amended complaint

7         which complies with the instructions given above.  If plaintiff fails to timely comply

8         with this order, the undersigned may recommend that this action be dismissed.

9   DATED: January 6, 2026

10

11   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28